[Cite as *State v. Bennett*, 2018-Ohio-3623.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2017-09-138 |
| | : | O P I N I O N |
| - vs - | | 9/10/2018 |
| | : | |
| DALE E. BENNETT, | : | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM BUTLER COUNTY AREA III COURT
Case No. CRB1601318


Michael T. Gmoser, Butler County Prosecuting Attorney, Willa Concannon, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Repper-Pagan Law, Ltd., Christopher J. Pagan, 1501 First Avenue, Middletown, Ohio 45044, for defendant-appellant


**HENDRICKSON, J.**

{¶ 1} Defendant-appellant, Dale E. Bennett, appeals from his conviction in the Butler County Area III Court for sexual imposition. For the reasons set forth below, we affirm appellant's conviction.

{¶ 2} Following an incident that occurred on August 26, 2016, at a restaurant in West Chester, Ohio, appellant was charged by complaint with one count of sexual imposition in

violation of R.C. 2907.06(A)(1), a misdemeanor of the third degree. The complaint alleged appellant followed the victim, K.D., into Dewey's Pizza. Once inside the restaurant, appellant touched K.D. on the shoulders while standing behind her before touching K.D.'s clothed buttocks with his clothed penis. Appellant pled not guilty to the charge and a bench trial was held on March 9, 2017.

{¶ 3} The state presented testimony from K.D., who testified that on the evening of August 26, 2016, she visited Dewey's Pizza to pick up a carry-out order. After exiting her vehicle, K.D. encountered appellant in the parking lot. Appellant was wearing a kilt, which he compared to K.D.'s skirt. Appellant told K.D., "Mine's prettier than yours, mine's prettier than yours, mine's prettier than yours." When K.D. went to enter the restaurant, appellant demanded that she hold the door open for him, telling her "Well, men have equal rights, you know, too; it's not just all about women." K.D. responded to appellant's peculiar statement by saying "umm, okay," and holding the door open for him.

{¶ 4} Once inside, K.D. went to the end of the bar to pick up her pizza. Appellant followed "closely behind" her. K.D. gave her name to the hostess. Appellant, who was behind K.D., placed his hands on K.D.'s shoulders, massaged her shoulders, and rubbed his semi-erect genitals on her buttocks for several seconds before walking away and unsuccessfully attempting to engage a couple in conversation.

{¶ 5} K.D. stated she was "totally shocked" by appellant's actions but had "no doubt" appellant had rubbed his genitals against her buttocks. K.D. was "100 percent positive" appellant was not wearing a fanny pack, bag, or sporran around his waist when he was standing behind her.[1] K.D. had observed that appellant was wearing a kilt with a cotton T-

---

1. A "sporran" is "a large pouch of skin with the hair or fur on that is worn in front of the kilt by Highlanders in full dress and used as a purse." *Webster's Third New International Dictionary*, 2206 (1993). At trial, appellant described his sporran as a "medium-sized or large-sized chain purse" that he used to store his keys, money, camera, identification, and phone.

shirt tucked into it, with "absolutely nothing around his waist."

{¶ 6} K.D. told the hostess what had occurred, and the hostess walked around the restaurant to try to locate appellant. K.D. realized appellant had not given his name for a table nor had he picked up a carryout order. K.D. therefore felt appellant had followed her into the restaurant. The hostess was unable to locate appellant, and K.D. spoke with the restaurant's manager, who called the police.

{¶ 7} Angela Robbins, an employee of Dewey's Pizza, testified that she was working on August 26, 2016 when she observed appellant and K.D. enter the restaurant. Robbins testified she briefly went into the kitchen when appellant and K.D. arrived. When she returned from the kitchen, she saw K.D. waiting for her order and appellant "leaving very quickly out the emergency exit." According to Robbins, the door was clearly marked "for emergency only." Robbins testified that as appellant left through the emergency door, she noticed he had a fanny pack over his shoulder. Robbins did not notice whether appellant was wearing the fanny pack when he first arrived but stated that appellant had worn a fanny pack around his waist on a prior visit to Dewey's Pizza that took place on August 4, 2016.

{¶ 8} West Chester Township Police Officer Steven Seitzman testified he was dispatched to Dewey's Pizza on August 26, 2016, where he spoke with K.D., Robbins, and the restaurant's manager. The following evening, Seitzman called appellant to discuss the incident. This phone call was recorded, and the recording was played at trial.[2]

{¶ 9} During the phone call, appellant initially denied being in West Chester on August 26, 2016. Later in the conversation, he admitted he went to Dewey's Pizza, but

---

2. App.R. 9(A)(1) provides that "[t]he original papers and exhibits thereto filed in the trial court, the transcript of proceedings, if any, *including exhibits*, and a certified copy of the docket and journal entries prepared by the clerk of the trial court shall constitute the record on appeal in all cases." (Emphasis added.) In the present case, the recording of appellant's phone call with Officer Seitzman was not included in the record on appeal. However, a transcription of the recording was included in the transcript of the trial proceedings and was reviewed by this court in rendering our opinion.

stated that "[t]here was no place to sit. And I left. End of story as far as that goes." Appellant also initially claimed he could not remember if he was wearing a kilt for his visit to Dewey's Pizza, and he denied having any contact with a female patron at the restaurant. He then suggested that it was possible someone misconstrued "just a nice hello," and stated that "if I * * * touched anybody's shoulder or something, and they didn't like it or whatever, I mean women do a whole lot more to me. I didn't do anything out of the way."

{¶ 10} Eventually appellant admitted to Seitzman that he touched a woman's shoulders "maybe for a few seconds" as a means of greeting her and saying hello. He also admitted he was wearing a kilt and stated that the sporran he was wearing with his kilt must have brushed up against the woman and "she took it the wrong way." Appellant told Seitzman, "I was just saying hello as I was leaving as far as I know. I just brushed forward * * * [and] touched someone as I was leaving. No one said anything to me, so I didn't think nothing more of it." He further stated, "Usually if I do something wrong or out of the way, especially with a group or a family or a boyfriend or husband or whatever, somebody will turn around and say something to you. Nobody said anything to me."

{¶ 11} In addition to testifying about his phone call with appellant, Seitzman testified about his discussion with Robbins and his written report of that discussion. In Seitzman's written report, he indicated Robbins' told him that appellant was wearing a fanny pack around his waist on August 26, 2016, not on his shoulder. However, Seitzman testified he might have been "mistaken" in drafting his report, as Robbins' trial testimony was "very vivid * * * [and] more in depth than [the] little paragraph, and the two sentences of [his] conversation" that he included in his report.

{¶ 12} Following the state's presentation of its case-in-chief, appellant moved for acquittal pursuant to Crim.R. 29. The trial court denied the motion. Appellant's friend, Jim Marlow, was called as a character witness for appellant. Marlow testified he has known

- 4 -

appellant for over 50 years, as appellant began living with Marlow's family when he was 10 years old. Marlow stated he talks with appellant at least once a week and sees appellant about once a month. Marlow explained that when appellant was 16, appellant was involved in a very serious car accident that noticeably changed his personality. According to Marlow, some people avoid appellant as he "gets very excitable" and talks loudly.

{¶ 13} Marlow testified about his opinion of appellant's behavior around woman, stating that he had never heard appellant say anything inappropriate or do anything inappropriate to or around women. Rather, Marlow had observed appellant acting appropriately when appellant was around Marlow's granddaughters and was out on dates with women.

{¶ 14} Appellant then testified on his own behalf. Appellant discussed the serious car accident he was in at age 16, stating he "guesses it has affected [him]." He discussed his love of kilts and noted that he has been wearing them regularly for about ten years. Appellant stated that whenever he wore a kilt, he also wore a sporran around his waist. Inside the sporran appellant carried his keys, money, camera, identification, and phone.

{¶ 15} Appellant testified that on August 26, 2016, he went to Dewey's Pizza, a restaurant he had frequented on a prior occasion. Appellant stated he was dressed in a kilt and acknowledged that he was not wearing undergarments underneath the kilt. He testified that he was wearing a sporran around his waist on this occasion and expressly denied that he had carried the sporran over his shoulder, as Robbins had testified. Appellant stated the numerous items he was carrying inside his sporran made it "quite heavy" and caused it to hang down in front of his groin.

{¶ 16} Appellant admitted he had entered the restaurant at the same time as K.D., had teased K.D. that his kilt was cuter than her skirt, and had insisted that K.D. hold open the door as "that's the proper thing to do." Appellant claimed that Dewey's Pizza was too

crowded, so he left after a few minutes to go to Bonefish Grill, a nearby restaurant. Appellant acknowledged he had not told Seitzman about going to Bonefish Grill during their phone call and stated the reason he did not tell Seitzman was because "[t]hat's very personal."

{¶ 17} Although appellant admitted during his phone call with Seitzman that he had intentionally touched K.D.'s shoulders, at trial, appellant testified only that he "possibly" placed his hands on K.D.'s shoulders when he was leaving Dewey's Pizza as a way of "bracing" himself when trying to "squeeze through" people. Appellant also stated that it was "possible" his sporran touched K.D.'s buttocks as he was "scooting out sideways" in order to leave the restaurant. However, appellant expressly denied purposefully massaging K.D.'s shoulders or rubbing his groin against K.D.'s buttocks, stating he "had no interest." He also testified that he did not recall leaving the restaurant through an emergency exit and stated that the reason he initially lied to Seitzman over the phone about having been at Dewey's Pizza or wearing a kilt on August 26, 2016, was because he "didn't know what the phone call was about * * * didn't know who it was," and was in a noisy environment having a hard time hearing the caller.

{¶ 18} Following appellant's testimony, the defense rested, and the trial court found appellant guilty as charged. Appellant was subsequently sentenced to a suspended 60-day jail term, placed on probation for one year, designated a Tier I sex offender, and ordered to pay a $250 fine and court costs.

{¶ 19} Appellant timely appealed his conviction, raising two assignments of error.

{¶ 20} Assignment of Error No. 1:

{¶ 21} THE TRIAL COURT ERRED IN OVERRULING DEFENSE COUNSEL'S OBJECTION TO TESTIMONY REGARDING [APPELLANT'S] ALLEGED PRIOR MISCONDUCT.

{¶ 22} In his first assignment of error, appellant argues the trial court erred when it

- 6 -

permitted the state to cross-examine a defense witness about a prior, uncharged act of misconduct allegedly committed by appellant when the court had previously granted appellant's motion in limine to exclude reference to the incident.

{¶ 23} Prior to trial commencing, appellant filed a motion in limine seeking to exclude from evidence a prior bad act that occurred at Dewey's Pizza. The state was prepared to present testimony from Robbins that on August 4, 2016, appellant had approached the bar at Dewey's Pizza while wearing a kilt, placed his genitals on the bar, and asked her, "Want to see my kilt?" The trial court granted appellant's motion to exclude testimony about this event.

{¶ 24} At trial, the defense presented testimony from Marlow about appellant's character for truthfulness. Marlow testified appellant was "very truthful" individual with a good reputation for honesty. Defense counsel then questioned Marlow about appellant's interaction and "character for appropriate behavior" around women as follows:

> [Defense Counsel]: Now, have you ever seen [appellant] interact with any women, females?
>
> [Marlow]: A couple of times he's had a date out. My wife * * * and I would go out or something, we run into him, and he would be with a date. I don't know very much about his personal life that way, but I have seen him probably with two or three different women in four or five years.
>
> [Defense Counsel]: Okay. Have you seen him interact with your granddaughters for instance?
>
> [Marlow]: Oh, yes, they love him. I mean, [appellant], outside of him being – he can be – it gets a little uncomfortable when he gets close and talks, but I have never seen anything out of [appellant] that would bother me or my grandchildren.
>
> [Defense Counsel]: So, in all of your contacts with [appellant], have you ever seen him act inappropriately or say anything inappropriately to or around women?
>
> [Marlow]: No, I have not.
>
> * * *

[Defense Counsel]: All right. And lastly, based upon your personal contacts and interactions with [appellant], do you have an opinion regarding his character for appropriate behavior with women?

[Marlow]: I have never seen him do anything inappropriate to women. I have seen him out in his kilts and so forth. It's not my wardrobe, but he did one of those ancestry.com things, and found out he was part Scottish and he ha[s] been doing that ever since. This is him, I guess. But I have never seen him say or do anything to disrupt a woman's opinion of him. * * *

{¶ 25} Thereafter, on cross-examination, after being advised that Marlow had never seen appellant do anything inappropriate, the prosecutor asked, "Do you think if [appellant] walked into a bar with his kilt on and walked up to the bar and put his genitals on the bar and said 'let me show you my kilt,' do you think that would be inappropriate?" Marlow answered, "I would." Defense counsel then objected to the question, stating "Objection, Your Honor. That's facts not in evidence." The prosecutor argued that defense counsel had "opened the door" to cross-examination about specific instances of conduct. The trial court ultimately overruled the objection, stating "I think it's appropriate engaging the witness and he said he has not seen him do anything inappropriate. I think as far as this witness' opinion, whether or not a hypothetical posed to him is inappropriate or not is a fair question. Overruled."

{¶ 26} Appellant challenges the trial court's decision to allow the state to cross-examine appellant's character witness about a specific instance of appellant's misconduct. Appellant contends the evidence was not proper under the rules of evidence and "Marlow's inadmissible opinion testimony as to an uncharged act was prejudicial to the outcome in this case." Specifically, appellant contends it was prejudicial for the judge, as the sole trier of fact, to "hear a prominent character witness alter his opinion of the defendant's character based on an uncharged act, when that opinion was elicited in the form of an impermissible hypothetical question that speaks directly to a motive or lack of mistake."

{¶ 27} As an initial matter, we note that "[a] trial court has broad discretion in the

admission and exclusion of evidence and unless it clearly abused its discretion and appellant is materially prejudiced thereby, an appellate court should not disturb the decision of the trial court." *State v. Martin*, 12th Dist. Butler No. CA2007-01-022, 2007-Ohio-7073, ¶ 9. An abuse-of-discretion standard of review is a deferential review. *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶ 14. An abuse of discretion is more than an error of law or judgment; it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *State v. Perkins*, 12th Dist. Clinton No. CA2005-01-002, 2005-Ohio-6557, ¶ 8.

{¶ 28} Evid.R. 404 governs the admissibility of character evidence and it provides in relevant part as follows:

> (A) **Character evidence generally.** Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, subject to the following exceptions:
>
> (1) Character of accused. *Evidence of a pertinent trait of character offered* by an accused, *or by the prosecution to rebut the same is admissible*; however, in prosecutions for rape, gross sexual imposition, and prostitution, the exceptions provided by statute enacted by the General Assembly are applicable.

(Emphasis added.) Therefore, "[t]he basic rule is that the defendant may, at his option, offer evidence of his good character as proof that he did not commit the act charged because such conduct is not in accord with his character. * * * If the accused offers evidence of his good character, then and only then, can the prosecution offer evidence of the bad character of the accused." Staff Notes to Evid.R. 404(A)(1); *State v. Bozeman*, 12th Dist. Butler No. CA2008-10-248, 2009-Ohio-3677, ¶ 41; *State v. Kelly*, 11th Dist. Portage No. 2010-P-0049, 2012-Ohio-523, ¶ 40.

{¶ 29} As the Ohio Supreme Court recognized, one of the ways to rebut the testimony of a character witness is to cross-examine the witness "as to the existence of reports of

particular acts, vices, or associations of the person concerning whom he has testified which are inconsistent with the reputation attributed to him by the witness – not to establish the truth of the facts, but to test the credibility of the witness, and to ascertain what weight or value is to be given his testimony." *State v. Elliott*, 25 Ohio St.2d 249 (1971), paragraph two of the syllabus, *vacated in part on other grounds*, 408 U.S. 939, 92 S.Ct. 2872 (1972). "Such inconsistent testimony tends to show either that the witness is unfamiliar with the reputation concerning which he has testified, or that his standards of what constitutes good repute are unsound." *Id.*

{¶ 30} Furthermore, Evid.R. 405 sets forth the appropriate methods for proving character, and provides as follows:

> (A) **Reputation or opinion.** In all cases in which evidence of character or a trait of character of a person is admissible, *proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.*
>
> (B) **Specific instances of conduct.** In cases in which character or a trait of character of a person is an essential element of the charge, claim, or defense, proof may also be made of specific instances of his conduct.

(Emphasis added.)

{¶ 31} Pursuant to the rules set forth above, we find that the state's cross-examination of Marlow was proper. During direct examination, Marlow testified about appellant's good character, raising the inference that appellant did not commit the crime charged because such conduct was not in accord with his character "for appropriate behavior with women." Appellant, therefore, opened the door to allow the prosecution to rebut the inference that appellant had a character for appropriate behavior with women during its cross-examination of Marlow. Evid.R. 404(A)(1) and 405(A) permitted the state to inquire about specific instances of inappropriate conduct. *See Bozeman* at ¶ 38-58; *State v. Posey,*

9th Dist. Summit No. 20578, 2001 Ohio App. LEXIS 5498, *3-5 (Dec. 12, 2001); *State v. Mathis*, 9th Dist. Summit No. 19036, 1999 Ohio App. LEXIS 3112, *2-6 (June 30, 1999).

**{¶ 32}** "[W]hen using specific instances of bad conduct to cross-examine a character witness, an attorney must have a good faith factual basis for the prior conduct." *Id.* at *6, citing *State v. Hart*, 72 Ohio App.3d 92, 98 (10th Dist.1991). Here, the prosecutor acted in good faith when referencing appellant's December 4, 2016 conduct at Dewey's Pizza during his cross-examination of Marlow. The prosecutor discussed the factual predicate for his belief that the incident took place when the court initially considered appellant's motion in limine at the start of the trial. Furthermore, as defense counsel never challenged the prosecutor's good-faith basis for asking about the December 4, 2016 incident, we may presume the prosecutor had one. *See State v. Gillard*, 40 Ohio St.3d 226, 231 (1988) ("Since the prosecutor's good-faith basis for asking these questions was never challenged, we presume she had one").

**{¶ 33}** Appellant contends that the trial court erred when it allowed the state to ask Marlow about the December 4, 2016 incident through the use of a "hypothetical," as Marlow was a lay witness and not an expert witness. We find no error in the manner in which the state cross-examined Marlow about the December 4, 2016 incident. The prosecutor merely inquired about a specific instance of inappropriate conduct committed by appellant and asked Marlow his opinion of such conduct. As discussed above, this was appropriate and authorized by Evid.R. 405(A). *See Mathis*, 1999 Ohio App. LEXIS 3112 at *2-6.

**{¶ 34}** Furthermore, contrary to appellant's arguments, we find that appellant was not prejudiced by the state's cross-examination of Marlow regarding the December 4, 2016 incident. In evaluating appellant's claim of prejudice, it is important to note that appellant was tried to the bench. The Ohio Supreme Court has recognized that in bench trials, the trial judge is "presumed to consider only the relevant material and competent evidence in arriving

at a judgment, unless the contrary affirmatively appears from the record." *State v. Eubank*, 60 Ohio St.2d 183, 187 (1979). *See also State v. Flores*, 12th Dist. Warren No. CA2014-03-037, 2014-Ohio-5751, ¶ 29. We must therefore presume that the trial court considered testimony relating to the December 4, 2016 incident only for its proper limited purpose. *See State v. Binks*, 12th Dist. Butler No. CA2017-08-118, 2018-Ohio-1570, ¶ 51.

{¶ 35} Accordingly, for the reasons expressed above, we conclude that the trial court did not abuse its discretion in permitting Marlow to be cross-examined about the December 4, 2016 incident at Dewey's Pizza. Defense counsel's questioning of Marlow opened the door for the prosecution to rebut the inference that appellate had a character for appropriate behavior around women in accordance with Evid.R. 404(A)(1) and 405(A). Appellant's first assignment of error is, therefore, overruled.

{¶ 36} Assignment of Error No. 2:

{¶ 37} THE TRIAL COURT ERRED IN DENYING DEFENSE COUNSEL'S RULE 29 MOTION FOR ACQUITTAL WHEN THERE WAS INSUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION UNDER R.C. 2907.06(A)(1); AND, [APPELLANT'S] CONVICTION WAS CONTRARY TO LAW.

{¶ 38} In his second assignment of error, appellant argues the trial court erred by denying his Crim.R. 29 motion for acquittal, his conviction for sexual imposition was not supported by sufficient evidence, and his conviction was against the manifest weight of the evidence.

{¶ 39} Crim.R. 29(A) provides that "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." An appellate court reviews the denial of a Crim.R. 29(A) motion under the same standard as that used to review a sufficiency-of-the evidence claim. *State v. Mota*, 12th Dist.

Warren No. CA2007-06-082, 2008-Ohio-4163, ¶ 5.

{¶ 40} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 41} On the other hand, a manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. An appellate court will overturn a conviction due to the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.*, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

{¶ 42} Further, although the legal concepts of sufficiency of the evidence and weight of the evidence are quantitatively and qualitatively different, "[a] determination that a

conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶ 43} Appellant was convicted of sexual imposition in violation of R.C. 2907.06(A)(1), which provides that "[n]o person shall have sexual contact with another, not the spouse of the offender * * * when * * * [t]he offender knows that the sexual contact is offensive to the other person, or one of the other persons, or is reckless in that regard." Sexual contact means "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, public region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). "In regard to 'sexual arousal' or 'sexual gratification,' R.C. 2907.01(B) contemplates 'any touching of the described areas which a reasonable person would perceive as sexually stimulating or gratifying.'" *State v. McCoy*, 12th Dist. Butler No. CA2015-05-095, 2016-Ohio-1577, ¶ 14, quoting *State v. Gesell*, 12th Dist. Butler No. CA2005-08-367, 2006-Ohio-3621, ¶ 23.

{¶ 44} While the purpose of sexual arousal or gratification is an element of the offense of sexual imposition, "there is no requirement that there be direct testimony regarding sexual arousal or gratification." *State v. Curtis*, 12th Dist. Butler No. CA2008-01-008, 2009-Ohio-192, ¶ 52. Rather, "[w]hether the touching was performed for the purpose of sexual arousal or gratification is a question of fact to be inferred from the type, nature, and circumstances of the contact." *Gesell* at ¶ 25. In making this determination, the trier of fact is "permitted to infer what the defendant's motivation was in making the physical contact with the victim." *State v. Robinson*, 12th Dist. Butler No. CA2015-01-013, 2015-Ohio-4533, ¶ 43.

{¶ 45} After reviewing the record, weighing inferences and examining the credibility of the witnesses, we find that appellant's conviction for sexual imposition is supported by sufficient evidence and is not against the manifest weight of the evidence. The state

presented testimony and evidence proving all the essential elements of the offense beyond a reasonable doubt.

{¶ 46} Testimony was presented that appellant made peculiar statements to K.D. in the parking lot of Dewey's Pizza before following her into the restaurant. Once inside, appellant neither gave his name for a table nor picked up a carryout order. Instead, appellant stood directly behind K.D., massaged her shoulders, and rubbed his semi-erect genitals against her buttocks for several seconds before fleeing the restaurant through an emergency door. At this time, appellant was not wearing undergarments under his kilt. Looking at the totality of these circumstances, a finder of fact could determine that appellant rubbed his genitals against K.D.'s buttocks for the purpose of sexually arousing and gratifying himself and then fled, knowing that the sexual contact was offensive to K.D. Appellant's defense that the touching was accidental is belied by the fact that he followed K.D. into the restaurant, admitted he intentionally touched her shoulders as a way of saying a "nice hello," made sexual contact with her, immediately left out an emergency door, and then gave an ever-changing statement about the events during his phone call with Officer Seitzman. Appellant initially denied being at Dewey's Pizza on August 26, 2016, before admitting he had been there, initially claimed he could not recall whether he wore a kilt to the restaurant before remembering he had worn a kilt with a sporran, and initially denied making contact with a female patron at the restaurant before admitting he touched K.D.'s shoulders with his hands and his stating his sporran must have accidentally brushed up against K.D. as he was leaving.

{¶ 47} Although appellant claimed at trial that it was his sporran, weighed down by his personal belongings, that came into contact with K.D.'s buttocks, the trial court heard testimony from K.D. that she was "100 percent positive" appellant had not been wearing the sporran around his waist when he was standing behind her. Robbins also testified that

appellant was carrying a bag over his shoulder when he went out the restaurant's emergency door. When there is a conflict in the testimony of witnesses, it is for the trier of fact to determine the weight and credibility to be given to such evidence. *State v. Marcum*, 12th Dist. Butler No. CA2017-05-057, 2018-Ohio-1009, ¶ 31, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. "[A] conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony." *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17. Here, the trial court clearly believed the state's version of events and found K.D.'s and Robbins' testimony credible. As the court noted in rendering its guilty verdict,

> THE COURT: [T]here's the notion that the defendant says, "Well, I was wearing a sporran the entire time." State's first witness, [K.D.], is adamant that he was not wearing it. I don't really have anything to suggest [that] the State's first witness, a private citizen * * * developed a personal vendetta against somebody that she doesn't even know for brushing up against her. [That] seems stretched.
>
> And why her recollection is so adamant also is for her to somehow fabricate or even for the State's other witness * * * the other employee of Dewey's is saying that she recalls the sporran around the defendant's shoulder gives credence to the testimony of the State's first witness that it wasn't around his waist. And the prosecutor's proposition that this sporran, if that was what was brushed up against the buttocks of another person, the Court agrees that is certainly not something likely to be mistaken or clearly identified as an erect or semi-erect penis. That doesn't – that doesn't make any sense as far as that is concerned.
>
> * * *
>
> But quite honestly, the thing that I find the most telling when we weigh the credibility of the defendant versus the accusers in this particular case is the defendant's statement that the contact he would have had with her happened on his way out, and that doesn't make any sense because if he had contact with her on his way out, he would have had to backtrack from the bar to where she was waiting on her to go * * * pizza there at that bar corner, and then back out the other door.

Therefore, given the testimony and evidence before it, the trial court was entitled to discredit

appellant's testimony that it was his sporran – and not his genitals – that rubbed against K.D.'s buttocks.

{¶ 48} Accordingly, after viewing the evidence in a light most favorable to the prosecution and relying on the trial court's credibility determination that K.D.'s testimony was credible while appellant's testimony was not, we find that appellant's conviction for sexual imposition was supported by sufficient evidence and was not otherwise rendered against the manifest weight of the evidence. Appellant's second assignment of error is, therefore, overruled.

{¶ 49} Judgment affirmed.

S. POWELL, P.J., and PIPER, J., concur.