[Cite as *In re J.C.*, 2024-Ohio-1839.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLINTON COUNTY

|  |  |  |
|---|---|---|
| IN RE: | : | |
| J.C. | : | CASE NO. CA2023-05-009 |
| | : | O P I N I O N<br>5/13/2024 |
| | : | |
| | : | |
| | : | |

APPEAL FROM CLINTON COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 20222139

Victoria Ferry, Assistant State Public Defender, for appellant.

Andrew T. McCoy, Clinton County Prosecuting Attorney, and Danielle E. Sollars, Assistant Prosecuting Attorney, for appellee.

**PIPER, J.**

{¶ 1} Appellant, J.C., appeals from the decision of the Clinton County Court of Common Pleas, Juvenile Division, adjudicating him a delinquent child. The victim in this case passed away prior to trial. This appeal largely concerns the introduction of evidence through the excited utterance exception to the hearsay rule and whether the evidence introduced at trial supported the adjudication.

## RELEVANT FACTS

{¶ 2} On December 13, 2022, a complaint was filed alleging J.C. was a delinquent child for having committed an act that if charged as an adult would constitute domestic violence in violation of R.C. 2919.25(C), a fourth-degree misdemeanor. The matter proceeded to a bench trial before the juvenile court.

{¶ 3} The evidence revealed that 16-year-old J.C. lived with his grandparents, Charles and Linda, at their home in Clinton County, Ohio. On August 23, 2022, at 2:25 a.m., Deputy Alicia Ellis was dispatched to the home after emergency services received a 911 hang-up call.

{¶ 4} When she arrived, Deputy Ellis observed Charles staggering around outside attempting to flag her down. Deputy Ellis noticed that Charles had urinated himself and was visibly scared—shaking and behaving frantically. Deputy Ellis testified:

> [Charles is] pointing to a house, that's my house, that's my house, he's in there. And I'm trying to calm him down, you know * * *. * * * [M]y grandson, [J.C.], is in there. He's looking for a gun, and he's just frantic.
>
> * * *
>
> So I called for two additional backup units. I know that the garage door is up. I know that I have a very large property here with surrounding houses. [Charles] had stated to me to the effect of [J.C.] had thrown a bullet at me, he's got a sword, he's looking for a gun.

{¶ 5} Deputy Ellis entered the residence where she observed that the home was in disarray. She noticed an overturned couch and multiple holes and slices in the wall. She also found two "ninja swords" and a bullet. After exiting the residence, she asked Charles about it:

> I reiterate to Charles, I said, what in the world is going on in your house, how did you get all that damage downstairs? He said [J.C.].

* * *

And I said, but why? And he goes, he has a tendency to get mad, he uses those swords, he cuts my walls up and punches my walls. And I said tonight? And he goes, yeah, tonight, all the time. And I said okay, but what, you know, why tonight? He goes, I don't know.

Deputy Ellis testified that J.C. admitted he was in an altercation, flipped a couch, and threw a bullet. Deputy Ellis asked J.C. if he was going to hurt anyone, and J.C. responded that he was "having thoughts." Thereafter, J.C. was transported to the hospital for a mental health evaluation. As previously noted, by the time of trial, Charles had passed away. Deputy Ellis was the only witness called by the state.

{¶ 6} The defense called J.C.'s grandmother, Linda, who was not present during the altercation. Nevertheless, Linda testified that Charles was very forgetful and "real paranoid about things." Linda said she thought Charles may not have been in the right frame of mind.

{¶ 7} J.C. took the stand and denied threatening Charles. He said that evening he was bored, watching television when he decided to oil up his katana sword. He testified that he "gently" flipped a couch while looking for the katana oil and found a bullet in the process. J.C. claimed that he simply handed the bullet to Charles. While J.C. acknowledged that he had been in an argument with Charles earlier in the day, J.C. said he was "perfectly calm" that evening and the whole thing was a "big misunderstanding."

{¶ 8} The juvenile court found the state had proven the elements of the offense beyond a reasonable doubt and adjudicated J.C. as delinquent. J.C. timely appeals, raising three assignments of error for review.

**APPEAL**

{¶ 9} Assignment of Error No. 1:

THE JUVENILE COURT ERRED WHEN IT ADMITTED THE

STATEMENTS OF THE ALLEGED VICTIM, IN VIOLATION OF J.C.'S RIGHT TO CONFRONTATION AS GUARANTEED BY THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE I, SECTION 10, OHIO CONSTITUTION.

{¶ 10} In his first assignment of error, J.C. argues the trial court erred by admitting inadmissible hearsay evidence during trial. He also argues he was denied his confrontation rights.

**STANDARDS OF REVIEW**

{¶ 11} A trial court has broad discretion to admit or exclude evidence. *State v. Hines*, 12th Dist. Clermont No. CA2017-06-025, 2018-Ohio-1780, ¶ 52. As such, a reviewing court will not disturb that decision absent an abuse of discretion that creates material prejudice. *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, ¶ 66. An abuse of discretion is more than an error of judgment or law, it signifies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *State v. Bennett*, 12th Dist. Butler No. CA2017-09-138, 2018-Ohio-3623, ¶ 27.

{¶ 12} However, we review a claim that a criminal defendant's rights have been violated under the Confrontation Clause de novo. *State v. Doby*, 12th Dist. Butler No. CA2013-05-084, 2014-Ohio-2471, ¶ 31. In a de novo review, this court independently reviews the record without giving deference to the trial court's decision. *State v. Knecht*, 12th Dist. Warren No. CA2015-04-037, 2015-Ohio-4316, ¶ 20.

**HEARSAY AND EXCITED UTTERANCES**

{¶ 13} "Hearsay" is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay is generally inadmissible in court unless the testimony is deemed "not hearsay" under Evid.R. 801(D) or falls under one of the hearsay exceptions articulated in Evid.R. 803 and 804, such as an excited utterance.

- 4 -

**{¶ 14}** An excited utterance is "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid. R. 803(2). A hearsay statement is admissible as an excited utterance if (1) there was an event startling enough to produce a nervous excitement in the declarant, (2) the statement was made while under the stress of excitement caused by the event, (3) the statement related to the startling event, and (4) the declarant must have had an opportunity to personally observe the startling event. *State v. Robinson*, 12th Dist. Butler CA2015-01-013, 2015-Ohio-4533, ¶ 27.

**{¶ 15}** Following review, we find the trial court did not err by admitting the statements under the excited utterance exception to the hearsay rule. The record reveals that Charles was attempting to flag Deputy Ellis down while visibly scared. He was shaking and behaving frantically. He had urinated himself. As Deputy Ellis tried to calm Charles down, Charles told the deputy that J.C. had a sword, was looking for a gun, and had thrown a bullet at him. After looking through the house, Deputy Ellis inquired about the state of the home and Charles replied "[J.C.]." He said J.C. gets mad and cuts up or punches the wall and that J.C. had done so that night.

**{¶ 16}** On appeal, J.C. offers several faulty and conclusory arguments. He first claims there was no "startling event." He cites testimony from Linda who said she thought Charles was not in the right state of mind.[1] J.C.'s second argument is that certain statements made by Charles were unrelated to the events that evening because the home had actually been damaged years before. Therefore, he argues that Charles' statement concerning the state of the residence "did not relate to the events of that evening."

**{¶ 17}** However, J.C.'s arguments are clearly without merit. In the present case,

---

1. J.C. says there was no gun in the home. Yet, Deputy Ellis testified that Charles took her to the gun's hiding spot and showed her where it had been hidden.

the startling event was J.C.'s violent and threatening behavior directed at his grandfather. Charles understood that J.C. had a sword and was searching for a gun. The behavior so alarmed Charles that he was found outside frantically waving down an officer after having urinated himself. J.C.'s argument that Charles was not in his right mind goes to credibility or reliability, not admissibility. The reliability of a hearsay witness is a question for the trier of fact that does not affect the admissibility of the statement. *State v. Wilson*, 4th Dist. Scioto No. 13CA3542, 2015-Ohio-2016, ¶ 95, citing *State v. Landrum*, 53 Ohio St.3d 107 (1990) (a hearsay witness's credibility "does not affect the statement's admissibility").

{¶ 18} We further disagree with J.C.'s bald assertion and claim that Charles' testimony about who damaged the home was unrelated to the startling event. Charles was clearly asked about the state of the home in reference to the startling event. Charles said J.C. damaged the home. Charles said J.C. has a "tendency to get mad" and cuts up and punches the walls. Charles said J.C. had done so that night. These were statements related to the emergency that occurred that evening, not remote commentary on prior behavior. Accordingly, we find the trial court did not err by admitting Charles' statements as excited utterances.

## THE CONFRONTATION CLAUSE

{¶ 19} J.C. also argues his Sixth Amendment right to confront witnesses was violated because he was unable to cross-examine Charles. The Confrontation Clause of the Sixth Amendment to the United States Constitution provides, "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." The Confrontation Clause bars admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination. *State v. Haag*, 12th Dist. Preble No. CA2022-05-008, 2023-Ohio-877, ¶ 10, citing *Crawford v. Washington*, 541 U.S. 36, 53-

54, 124 S.Ct. 1354 (2004).

{¶ 20} It is undisputed that J.C. did not have a prior opportunity to cross-examine Charles. Therefore, the issue is whether Charles' statements admitted into evidence were testimonial in nature. This is because the Sixth Amendment right to confrontation of witnesses does not extend to nontestimonial hearsay. *State v. Norris*, 2d Dist. Montgomery No. 26147, 2015-Ohio-624, ¶ 13, citing *State v. Stahl*, 111 Ohio St. 3d 186, 2006-Ohio-5482, ¶ 21. "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266 (2006). "They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id.* In determining whether a declarant's statements are testimonial, courts should look to all of the relevant circumstances. *Haag*, 2023-Ohio-877 at ¶ 11.

{¶ 21} We find the admission of Charles' statements did not violate J.C.'s confrontation rights because the statements were nontestimonial. The record shows that Charles made the statements shortly after being threatened by J.C. Charles was frantic and waving his arms in an attempt to flag Deputy Ellis down. He told her that J.C. was "looking for a gun," had thrown a bullet at him, and had a sword. We find the circumstances objectively indicate that Charles' primary purpose was to obtain assistance from law enforcement. Charles was not acting as a witness; he was not testifying. He was frantically attempting to get help. Therefore, J.C.'s claim that the testimony violated the Confrontation Clause is not well-taken.

## CONCLUSION TO ASSIGNMENT OF ERROR NO. 1

{¶ 22} We find the trial court did not abuse its discretion by admitting Charles' statements under the excited utterance hearsay exception. We further determine that J.C. was not deprived of his confrontation rights. J.C.'s first assignment of error is overruled.

## SUFFICIENCY AND WEIGHT OF THE EVIDENCE

{¶ 23} Assignment of Error No. 2:

THE CLINTON COUNTY JUVENILE COURT VIOLATED J.C.'S RIGHT TO DUE PROCESS OF LAW BECAUSE HIS ADJUDICATION WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE, IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION, AND ARTICLE I, SECTION 16, OHIO CONSTITUTION.

{¶ 24} Assignment of Error No. 3:

THE CLINTON COUNTY JUVENILE COURT VIOLATED J.C.'S RIGHT TO DUE PROCESS OF LAW BECAUSE HIS ADJUDICATION WAS NOT SUPPORTED BY CREDIBLE EVIDENCE, IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION, AND ARTICLE I, SECTION 16, OHIO CONSTITUTION.

{¶ 25} In his second and third assignments of error, J.C. argues his adjudication is based upon insufficient evidence and is against the manifest weight of the evidence. The standards of review applied in determining whether a juvenile's delinquency adjudication is supported by sufficient evidence and whether it is against the manifest weight of the evidence are the same standards as applied in adult criminal cases. *In re E.T.H.*, 12th Dist. Butler No. CA2018-04-064, 2019-Ohio-79, ¶ 13. The relevant inquiry in reviewing a claim of insufficient evidence is whether "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. McKnight*, 107 Ohio

St.3d 101, 2005-Ohio-6046, ¶ 70.

{¶ 26} In considering whether a conviction is against the manifest weight of the evidence, "a reviewing court must examine the entire record, weigh all of the evidence and reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *E.T.H.* at ¶ 14. Because a finding that an adjudication of delinquency is supported by the manifest weight of the evidence also necessarily includes a finding that it is supported by sufficient evidence, the determination that the adjudication is supported by the manifest weight of the evidence will also be dispositive of an appellant's sufficiency claim. *In re I.L.J.F.*, 12th Dist. Butler No. CA2014-12-258, 2015-Ohio-2823, ¶ 28.

{¶ 27} J.C. was adjudicated delinquent for committing domestic violence in violation of R.C. 2919.25(C). Pursuant to that statute, "[n]o person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member." For a violation of R.C. 2919.25(C), it must be shown that the victim believed the offender would cause him or her imminent physical harm at the time the incident took place. *State v. Hart*, 12th Dist. Warren No. CA2008-06-079, 2009-Ohio-997, ¶ 21.

{¶ 28} J.C. argues the trial court should have adopted his version of events while discounting Deputy Ellis' testimony and the statements Charles made to her admitted as excited utterances. However, the trial court is in the best position to weigh the evidence and evaluate the witnesses' credibility. *State v. Salinger*, 12th Dist. Butler No. CA2014-10-208, 2015-Ohio-2821, ¶ 20. We find the state presented evidence to prove each element of the offense beyond a reasonable doubt. J.C.'s adjudication was supported by sufficient evidence and was not against the manifest weight of the evidence. J.C.'s

second and third assignments of error are without merit.

{¶ 29} Judgment affirmed.

S. POWELL, P.J., and HENDRICKSON, J., concur.