OPINION
{¶ 1} Defendant-appellant, Winsor Naugler III, appeals his convictions on four counts of carrying concealed weapons in violation of R.C.2923.12(A).
 {¶ 2} On August 10, 2003, Ohio State Highway Patrol Post 49 received two 9-1-1 telephone calls regarding a gold Saturn automobile with Pennsylvania license plates. Both calls were made from cellular telephones. The first caller indicated that the driver of the vehicle was pointing his finger as if it were a gun in the direction of other motorists. The second caller stated that the driver was pointing a gun with his left hand and driving with his right hand. Both callers indicated that the vehicle was traveling eastbound on Interstate 70.
 {¶ 3} Based upon the 9-1-1 calls, a dispatch was made to Ohio State Highway Patrol Trooper Andre Swinerton. Trooper Swinerton subsequently located a vehicle that matched the description given by the 9-1-1 callers and began to follow it. Trooper Swinerton initiated a traffic stop after the driver failed to use a turn signal before changing lanes.
 {¶ 4} Trooper Swinerton approached the vehicle, which was being driven by appellant. Trooper Swinerton initially advised appellant that he had been stopped for failing to use his turn signal. After obtaining appellant's registration and driver's license, Trooper Swinerton inquired whether appellant had any weapons in the vehicle. Appellant indicated that he had one firearm in the trunk area of the vehicle. At this point, other highway patrol troopers arrived to assist Trooper Swinerton.
 {¶ 5} Trooper Swinerton asked appellant to exit his vehicle and advised appellant that he was in investigative custody and not free to leave. After being searched for weapons, appellant was placed in the back seat of a patrol car. Trooper Swinerton asked if there were other guns in appellant's vehicle, and appellant responded affirmatively. At that time, appellant asked to speak with an attorney and he was advised of hisMiranda rights.
 {¶ 6} A search of appellant's vehicle revealed one loaded handgun in a duffel bag in the trunk area; one loaded handgun on the passenger's seat covered by a white plastic bag; a loaded handgun on the passenger's floorboard inside a black backpack; and two handguns on the passenger's floorboard inside a brown satchel. The guns in the brown satchel were not loaded, but ammunition was ready-at-hand inside the brown satchel. All five guns found in appellant's vehicle were operational, and troopers found ammunition for all five guns in the vehicle.
 {¶ 7} Appellant was subsequently indicted for five counts of carrying a concealed weapon in violation of R.C. 2923.12(A). After a jury trial held in the Madison County Court of Common Pleas on June 21, 2004, appellant was found guilty of four counts of carrying concealed weapons, Counts I, II, IV, and V of the indictment. The trial court merged Counts I, IV and V for purposes of sentencing and sentenced appellant to a total of 60 days in jail. The sentence on Count II was ordered to be served concurrently with the sentence on Counts I, IV, and V. This appeal follows.
 {¶ 8} Appellant raises four assignments of error as follows:
 {¶ 9} Assignment of Error No. 1:
 {¶ 10} "THE TRIAL COURT ERRED TO DEFENDANT'S PREJUDICE BY ADMITTING TESTIMONIAL STATEMENTS MADE BY OUT-OF-COURT WITNESSES IN VIOLATION OF DEFENDANT'S SIXTH AMENDMENT RIGHT TO CONFRONT WITNESSES."
 {¶ 11} Assignment of Error No. 2:
 {¶ 12} "THE TRIAL COURT ERRED TO DEFENDANT'S PREJUDICE BY ADMITTING HEARSAY STATEMENTS CONTAINED IN AUDIOTAPES OF A 911 CALL THAT WERE NOT RELEVANT TO THE CHARGES AGAINST HIM."
 {¶ 13} Assignment of Error No. 3:
 {¶ 14} "THE TRIAL COURT ERRED TO DEFENDANT'S PREJUDICE BY FAILING TO SUPPRESS EVIDENCE DISCOVERED DURING A PRETEXTUAL SEARCH OF DEFENDANT'S VEHICLE IN VIOLATION OF THE FOURTH AMENDMENT."
 {¶ 15} Assignment of Error No. 4:
 {¶ 16} "THE TRIAL COURT ERRED TO DEFENDANT'S PREJUDICE BY FAILING TO MERGE MULTIPLE COUNTS INTO ONE COUNT OF CARRYING A CONCEALED WEAPON."
 {¶ 17} The first assignment of error asserts that the trial court should not have admitted the 9-1-1 calls into evidence because to do so violated appellant's right to confront witnesses against him guaranteed by the Confrontation Clause of the Sixth Amendment to the United States Constitution. The right of confrontation is a fundamental right made applicable to the states by the Fourteenth Amendment to the United States Constitution. Pointer v. State (1965), 380 U.S. 400, 85 S.Ct. 1065.
 {¶ 18} We note that this Confrontation Clause argument was not raised before the trial court. Issues not raised in the trial court will be reviewed on appeal only if the error alleged constitutes plain error of such magnitude as to deprive a defendant of a fair trial and cause a miscarriage of justice. State v. Williams, 79 Ohio St.3d 1, 1997-Ohio-407. Plain error will be noticed on appeal only if it is so egregious as to undermine the fairness of the guilt-determining process, or it is clear that but for the error the result in the trial court would have been different and disregarding the error would result in a miscarriage of justice. State v. Noling, 98 Ohio St.3d 44, 2002-Ohio-7044; State v.Swanson (1984), 16 Ohio App.3d 375; State v. Bock (1984),16 Ohio App.3d 146.
 {¶ 19} Ohio courts have not directly addressed the issue of whether admission of a 9-1-1 call based upon witness unavailability violates the right to confrontation. However, the United States Supreme Court has examined the admissibility of out-of-court statements under the Confrontation Clause and concluded that "[W]here testimonial statements are involved, * * *, [a]dmitting statements deemed reliable by a judge is fundamentally at odds with the right of confrontation." Crawford v.Washington (2004), 541 U.S. 36, 61, 124 S.Ct. 1354, 1370. However, whennontestimonial evidence is at issue, the United States Supreme Court has indicated that "it is wholly consistent with the Framers' design to afford the state's flexibility in their development of hearsay law * * *" and exempt such statements from Confrontation Clause scrutiny. Id. at 68, 124 S.Ct. at 1374. After determining that testimonial evidence is what the Confrontation Clause applies to, the Supreme Court chose to leave the definition of testimonial evidence to "another day." Id. However, the Supreme Court stated that the Confrontation Clause applies "at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." Id.
 {¶ 20} The United States Sixth Circuit Court of Appeals attempted to define testimonial evidence in U.S. v. Cromer (C.A.6, 2004), 389 F.3d 662. The Sixth Circuit concluded that the proper inquiry is "whether the declarant intends to bear testimony against the accused. That intent, in turn, may be determined by querying whether a reasonable person in the declarant's position would anticipate his statements being used against the accused in investigating and prosecuting the crime." Id. at 675. The court in Cromer found that if testimonial evidence is being used for a purpose other than establishing the truth of the matter asserted, it does not invoke the protections of the Confrontation Clause. Id. at 676.
 {¶ 21} In People v. Moskat, 3 Misc.3d 739, 2004 N.Y. Slip Op. 24090, a New York trial court found that a 9-1-1 call was not testimonial, and that admission of the call at trial when the witness was unavailable therefore did not violate the Confrontation Clause. The court held that a 9-1-1 call is essentially different from testimonial materials that the Confrontation Clause was designed to exclude. The court observed that a 9-1-1 call is "typically initiated not by the police, but by the victim of a crime. It is generated not by the desire of the prosecution or the police to seek evidence against a particular suspect; rather, the 911 call has its genesis in the urgent desire of a citizen to be rescued from immediate peril." The court stated that a pretrial examination is clearly testimonial in nature because it is undertaken by the government in contemplation of pursuing criminal charges against a particular person, but a 9-1-1 call is fundamentally different because it is undertaken by a caller who wants protection from immediate danger. "A testimonial statement is produced when the government summons a citizen to be a witness; in a 911 call, it is the citizen who summons the government to her aid. * * * It is the electronically augmented equivalent of a loud cry for help. The Confrontation Clause was not directed at such a cry." Id. at 4-5.
 {¶ 22} We agree that a 9-1-1 call is not inherently testimonial in nature; a caller who dials 9-1-1 is seeking immediate assistance, and is providing information for that purpose. Such a caller is not giving testimony or speaking with the intention of providing testimony at a later time. Such speech was aptly characterized by the New York court inMoskat as an "electronic cry for help" as opposed to a testimonial statement properly subject to cross-examination.
 {¶ 23} We therefore conclude that admission of the 9-1-1 call did not constitute plain error such that appellant was deprived of a fair trial. It is not clear that but for the alleged error the result would have been different, or that disregarding the alleged error would result in a miscarriage of justice. The first assignment of error is overruled.
 {¶ 24} Appellant contends in his second assignment of error that the trial court erred by admitting the statements contained in the 9-1-1 calls because they were hearsay and not relevant to the charges against him. Alternatively, appellant argues that even if the 9-1-1 statements are relevant and admissible, they should not have been admitted because their probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.
 {¶ 25} The 9-1-1 telephone calls in question indicated that someone in a gold Saturn automobile with Pennsylvania plates was pointing his finger as if it were a gun (first call) and pointing an actual gun (second call) at passing motorists. Appellant argues that since he was not charged with aggravated menacing or any other offense related to brandishing a firearm, the 9-1-1 calls should not have been admitted because they were not relevant to the carrying concealed weapons charges.
 {¶ 26} As a preliminary matter, the 9-1-1 calls were admissible as exceptions to the hearsay rule. They qualify as present sense impressions under Evid.R. 803(1), which provides that statements describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter, are admissible. The statements in this case were made by two independent callers, one from Texas and the other from Arizona. Both statements accurately described appellant's vehicle and provided the license number of the vehicle within one digit. Alternatively, the 9-1-1 statements are arguably not hearsay because they were not admitted for their truth, but to explain why Trooper Swinerton acted as he did when questioning appellant about weapons in his vehicle.
 {¶ 27} Further, the 9-1-1 statements were relevant. Evid.R. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would have been without the evidence." The 9-1-1 statements were relevant to show why Trooper Swinerton followed appellant's vehicle, and provided justification, at least in part, for stopping the vehicle and inquiring whether there were weapons inside.
 {¶ 28} Although appellant claims he did not make any gesture toward any driver with a gun, or indicating that he had a gun, the 9-1-1 calls suggest otherwise. Aggravated menacing and menacing both require the mental state of "knowingly," as does carrying a concealed weapon. We agree with the trial judge that evidence that appellant waived a gun at passing motorists was "temporarily, situationally, and modally related to the offense [of carrying a concealed weapon] and is inextricably related to the concealment of what was just brandished. The evidence tended to identify [appellant] as one who had possession of a gun, tended to establish that he concealed it knowingly and tended to counter [appellant's] testimony that he carried the concealed firearms defensively."
 {¶ 29} Appellant next argues that the 9-1-1 calls, if admissible, were unfairly prejudicial pursuant to Evid.R. 403. Although all evidence presented by the prosecution is prejudicial to the defendant, only evidence that is unfairly prejudicial is prohibited. State v. Skatzes,
Montgomery App. No. 15848, 2003-Ohio-516. The question of whether the probative value of relevant evidence is outweighed by its prejudicial effect is a decision within the sound discretion of the trial court. Id.
 {¶ 30} In this case, the trial court did not abuse its discretion by admitting the 9-1-1 calls into evidence. This evidence tended to show that appellant knowingly concealed firearms in his vehicle. We note that the jury was instructed that evidence that appellant waived a gun while passing other vehicles was to be considered only for a limited purpose, that is "as the immediate background to the facts of this case in considering [appellant's] knowledge of circumstances surrounding the offenses charged in the indictment." The jury carefully considered the evidence and found appellant not guilty of one carrying concealed weapons count. The second assignment of error is overruled.
 {¶ 31} In his third assignment of error, appellant argues that the stop of his vehicle was pretextual and thus invalid, and that his vehicle was illegally searched.
 {¶ 32} At trial, Trooper Swinerton testified that he stopped appellant based upon both an observed traffic violation (failure to signal a lane change) and the 9-1-1 calls received. Ohio law is clear that an officer may stop a motorist for any criminal violation, including a minor traffic violation, regardless of the underlying subjective intent of the officer for stopping the vehicle in question. Dayton v. Erickson, 76 Ohio St.3d 3,1996-Ohio-431. Accordingly, Trooper Swinerton had probable cause to stop appellant's vehicle for the observed traffic violation. Further, a radio dispatch can provide the sole basis for an investigatory stop. State v.Goodrich (1996), 114 Ohio App.3d 645.
 {¶ 33} Once appellant's vehicle had been stopped, Trooper Swinerton asked appellant whether there were guns in his vehicle, based upon the 9-1-1 calls and for his own safety. The propriety of an investigative stop must be viewed in light of the totality of the surrounding circumstances. State v. Bobo (1988), 37 Ohio St.3d 177. Under the circumstances here, there is little question that Trooper Swinerton could inquire about the presence of weapons in appellant's vehicle.
 {¶ 34} Once appellant admitted that he had a weapon in the trunk area of his vehicle, Trooper Swinerton removed appellant from the vehicle and conducted a further investigation. Trooper Swinerton testified that he was concerned about multiple guns in appellant's vehicle because the gun appellant admitted having in the trunk area of the vehicle was not within reach and therefore probably not the gun referred to in the 9-1-1 call.
 {¶ 35} We find that Trooper Swinerton had probable cause to stop appellant's vehicle, and sufficient cause to search appellant's vehicle based upon the 9-1-1 calls and appellant's responses to questions about weapons in the vehicle. The third assignment of error is overruled.
 {¶ 36} In his fourth assignment of error, appellant contends that the trial court erred by failing to merge the multiple counts of carrying a concealed weapon. Five guns were found in appellant's vehicle and he was indicted for five counts of carrying a concealed weapon. The jury found appellant guilty of four counts of carrying a concealed weapon, and appellant was sentenced on two counts. Appellant received the minimum sentence on both counts and the sentences were ordered to be served concurrently.
 {¶ 37} Upon review of the record, we find that there is evidence supporting the trial court's decision to sentence on two counts. Appellant's own testimony at trial indicates that he believed he could not protect himself with only one loaded handgun because he wanted to have a separate gun in a bag that he could carry when he stopped at rest areas. Further, because appellant received concurrent sentences, any error by the trial court in this regard is harmless. The fourth assignment of error is overruled.
 {¶ 38} Judgment affirmed.
Walsh and Young, JJ., concur.