[Cite as *State v. Cook*, 2021-Ohio-2157.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2020-08-053 |
| Appellee, | : | O P I N I O N<br>6/28/2021 |
| | : | |
| - vs - | : | |
| ROBERT A. COOK, | : | |
| Appellant. | : | |
| | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 20CR36679

David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for appellee

Thomas G. Eagle Co., L.P.A., Thomas G. Eagle, 3400 N. State Route 741, Lebanon, Ohio 45036, for appellant

**M. POWELL, P.J.**

{¶ 1}   Appellant, Robert A. Cook, appeals his felony conviction in the Warren County Court of Common Pleas for domestic violence.

{¶ 2}   On April 8, 2020, Robert L. Cook, appellant's father ("Father"), called 9-1-1 and advised the dispatcher that appellant had thrown a Coke can at him, hit him numerous

times, and busted his lip. Father told the dispatcher that the argument likely started over appellant drinking in Father's home. Father advised the dispatcher that he was calling from his car parked down the street and that he would wait until police arrived.

{¶ 3} Sergeant Terry Viel heard the 9-1-1 dispatch and responded to the scene. Upon seeing Sergeant Viel arrive, Father pulled his car in front of the officer's police cruiser. Father was holding a blood-covered rag against his lower lip; the lip was swollen and bleeding. Sergeant Viel noticed that Father was visibly shaken and distraught. As the officer spoke to Father, appellant was in the garage in an agitated state, yelling that he was angry at Father and calling him an "asshole." Sergeant Viel instructed appellant to go inside the house.

{¶ 4} By the time Sergeant Viel had finished speaking with Father, two other police officers had arrived on the scene. The three officers entered the home to arrest appellant for domestic violence. Appellant was in the basement watching television. He was very angry and agitated and told the officers that Father was a "fucking asshole." When the officers advised appellant he was being placed under arrest for domestic violence, he resisted. The officers were eventually able to handcuff appellant, place him in a police cruiser, and transport him to jail. During their interaction with appellant, the officers noticed that his right knuckles were red and bloody. The officers observed no injuries on appellant's person and he complained of none. At no time did appellant ask for help or state that Father hit him.

{¶ 5} Appellant was indicted on one count each of domestic violence and resisting arrest. The domestic violence count was charged as a third-degree felony because appellant had two prior domestic violence convictions. The matter proceeded to a jury trial on July 7, 2020.

{¶ 6} On the morning of the trial, appellant's trial counsel moved to dismiss the case

- 2 -

on the ground Father was not present to testify. The trial court denied the motion. Trial counsel next objected to Father's 9-1-1 call being played at trial, arguing that the 9-1-1 call was testimonial and violated appellant's Sixth Amendment right to confront witnesses against him. The trial court overruled the objection. At trial, the state presented the testimony of Sergeant Viel, the other two officers, and the custodian of the 9-1-1 call records. Father's 9-1-1 call was played to the jury and admitted into evidence. Two judgment of conviction entries were also admitted into evidence for appellant's two prior domestic violence convictions. Appellant did not testify and did not present evidence or witnesses on his own behalf.

{¶ 7} During the course of the trial, appellant interrupted the proceedings on several occasions. Appellant first interrupted trial counsel's cross-examination of one of the officers. The trial court warned appellant about his behavior and instructed the jury not to consider appellant's behavior or the court's response for any purpose. Following the state's case-in-chief, and while the jury had recessed for lunch, there was discussion as to whether trial counsel would call any witness. As the trial court invited trial counsel to state for the record what he wanted to do, appellant interjected, "And I'd like to fire you as my counsel." Trial counsel then indicated his intention to call Father as a witness at appellant's request. Appellant did not then or ever again assert a desire to fire counsel. As the state explained it had subpoenaed Father but was unsure whether he was properly served, appellant stated, "Beginning to finish. I've read the documents. I know what my rights are and they're not being afforded to me for speaking up. I'm getting hammered."

{¶ 8} Appellant next interrupted trial counsel's closing arguments, disagreeing with his assertion that appellant was cursing and shouting at the police during the incident and stating, "You're not even on my side." The trial court warned appellant about his behavior and reminded him he had already been warned once. When appellant continued by talking

- 3 -

over the trial court and arguing about the fairness of the proceedings and the fact the jury should know how much time he was facing, the trial court excused the jury from the courtroom. Thereafter, as the trial court informed appellant he would be removed from the courtroom, appellant stated, "You're making a mockery of the Court," "This is ridiculous and so are you," and "This is bullshit." Appellant further alleged that the state failed to timely turn over discovery and follow the rules of evidence.

{¶ 9} The trial court removed appellant from the courtroom and he was placed in a room where he was able to observe the proceedings on a monitor. The jury was returned to the courtroom. The trial court instructed the jury to disregard appellant's outbursts and the court's response to them and decide the case based solely upon the evidence and testimony. Closing arguments resumed. The trial court then instructed the jury, including on the prior convictions.

{¶ 10} The record indicates that appellant was returned to the courtroom at some point. After the jury recessed for the day, appellant once again engaged with the trial court, arguing that while a hung jury was an acceptable answer, it was not conveyed as such to the jury. After the court told appellant he had a problem with listening, appellant replied, "I have a problem with my rights not being observed," "I can die from this stuff," and "This is serious man."

{¶ 11} When trial resumed the next morning, the trial court asked appellant whether he intended to behave. Appellant replied, "I behaved yesterday," and promised he would behave. However, appellant, who had chosen to appear in a jail jumpsuit, promptly resumed his behavior of talking over the court, claiming violation of his rights and acting in a disrespectful manner. While arguing with the trial court over his decision to appear in jail clothing, appellant stated, "Ineffective counsel. You're -- this is my 91st day on the – past the speedy trial. This should be thrown out. It should've been thrown out yesterday." As

- 4 -

trial counsel informed the court that appellant's decision to appear in jail clothing was contrary to counsel's advice, appellant engaged with counsel, telling him, "You have not advised me one step of the way," "You let me get railroaded by discovery," "Screw you, man," and "Honor shit, man." Appellant was once again removed from the courtroom. The jury was not in the courtroom during this outburst. Appellant was returned to the courtroom for the jury's verdict. Appellant was found guilty as charged.

{¶ 12} After the jury was discharged, the trial court began discussing the proceedings for sentencing. Appellant interrupted, stating he was "okay with all of it," talked about two warrants that had disappeared, and warned that he would not complete the presentence-investigative report. When trial counsel stated he was going to do his job, appellant replied, "You haven't done your job," "I'll file my own appeal. I can't trust for him to do it. He didn't do anything that I asked of him during the trial." The next day, the trial court filed an entry regarding appellant's Sixth Amendment right to a speedy trial. The court found that appellant's jury trial "commenced on the 90th day of the Defendant's incarceration" and that "[d]ue to the constraints of conducting a jury trial during the COVID-19 pandemic and the schedule of the attorneys, * * * the date of the commencement of the trial was reasonable." Appellant was ultimately sentenced to 18 months in prison.

{¶ 13} Appellant now appeals, raising one assignment of error:

{¶ 14} THE TRIAL COURT ERRED IN CONVICTING APPELLANT.

{¶ 15} Appellant challenges his felony conviction for domestic violence, presenting four issues for review: the trial court's failure to inquire into appellant's complaints regarding his court-appointed attorney; the trial court's removal of appellant from the courtroom during his trial; the improper admission of Father's 9-1-1 call into evidence; and the improper admission into evidence of appellant's prior convictions for domestic violence. Appellant further argues that if the alleged errors are not individually reversible, this court should

reverse his conviction based on cumulative error.[1]

The Trial Court's Duty to Inquire

{¶ 16} Appellant argues the trial court erred by not inquiring into his complaints concerning his court-appointed counsel as required under *State v. Deal*, 17 Ohio St.2d 17 (1969).

{¶ 17} "Where, during the course of his trial for a serious crime, an indigent accused questions the effectiveness and adequacy of assigned counsel, * * * it is the duty of the trial judge to inquire into the complaint and make such inquiry a part of the record." *Id.* at syllabus. The inquiry may be brief and minimal, but it must be made. *State v. King*, 111 Ohio St.3d 70, 2006-Ohio-5283, ¶ 139. However, the "'limited judicial duty arises only if the allegations are sufficiently specific; vague or general objections do not trigger the duty to investigate further.'" *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, ¶ 68, quoting with approval *State v. Carter*, 128 Ohio App.3d 419, 423 (4th Dist.1998).

{¶ 18} In the wake of *Deal*, Ohio courts of appeal have reversed convictions when the trial court failed to inquire into specific objections about the performance of court-appointed counsel. *See State v. Prater*, 71 Ohio App.3d 78 (10th Dist.1990); *State v. King*, 104 Ohio App.3d 434 (4th Dist.1995). "Notably, however, courts have read *Deal* as imposing on a defendant the initial burden of articulating *specific* concerns about his appointed counsel. Absent specific objections to counsel's performance, the trial court has no duty to investigate anything." (Emphasis sic.) *State v. Hibbler*, 2d Dist. Clark No. 2001-

---

1. We note with disapproval appellant's shotgun approach of raising several issues that require different legal analyses under his sole assignment of error, instead of properly raising each specific issue in separate assignments of error. *See* Loc.R. 11(B)(3); *State v. Harner*, 12th Dist. Brown No. CA2019-10-012, 2020-Ohio-3071, ¶ 6, fn. 2; *State v. Wilson*, 12th Dist. Warren No. CA2018-03-022, 2019-Ohio-338, ¶ 24. "App.R. 16(A)(7) requires separate arguments for each assignment of error. While appellate courts may jointly consider two or more assignments of error, the parties do not have the same option in presenting their arguments." *Keffer v. Cent. Mut. Ins. Co.*, 4th Dist. Vinton No. 06CA652, 2007-Ohio-3984, ¶ 8, fn. 2; *State v. Dukes*, 4th Dist. Scioto Nos. 16CA3745 and 16CA3760, 2017-Ohio-7204, ¶ 59.

CA-43, 2002-Ohio-4464, ¶ 15; *State v. Simpson*, 8th Dist. Cuyahoga No. 88301, 2007-Ohio-4301, ¶ 67.

{¶ 19} We find that the trial court did not err in failing to inquire into appellant's complaints concerning his court-appointed counsel. As the trial court and the parties were discussing whether the defense would call witnesses, appellant told trial counsel he wanted to fire him. Appellant's objection was vague and general. Immediately thereafter, trial counsel communicated his intention to call Father as a witness. Appellant never again raised the issue of firing trial counsel. On the second day of the trial, appellant interjected "ineffective assistance," claiming a violation of his right to a speedy trial. The trial court rejected appellant's claim in an entry filed the next day.

{¶ 20} Appellant's brief refers to complaints he made regarding a misrepresented plea offer, ineffective or missing lines of questioning, misstating facts to the jury, admission of certain evidence, and failure to bring witnesses to trial.[2] However, these complaints were not accompanied by a request for new counsel or made in conjunction with a claim of ineffective assistance of counsel. Rather, the record shows that appellant was generally dissatisfied with the proceedings and all persons involved. In particular, his dissatisfaction appeared to be directly mainly at the trial court for not permitting him to speak his mind whenever he wanted.

{¶ 21} We find that appellant's single vocalized desire to fire his trial counsel was vague and general and was not specific enough to require inquiry by the trial court. Appellant's other complaints likewise do not allege or reveal specific objections regarding

2. Appellant's complaint regarding a misrepresented plea offer occurred during a pretrial hearing on June 15, 2020. The transcript of the hearing indicates that appellant may have misunderstood the sentencing recommendation the state had made in conjunction with a plea offer. Once the trial court discussed the issue with appellant at length and specifically explained that the state was not taking a position on sentencing and that appellant's sentence would be solely determined by the court, appellant indicated he understood and that he was satisfied with the explanation. Appellant made no further comment about trial counsel. Appellant never alleged that trial counsel was ineffective.

trial counsel's effectiveness or adequacy of representation. Given appellant's vague and general assertion he wanted to fire his trial counsel and the failure of his other complaints to raise any specific objections to trial counsel's performance, the trial court had no obligation to inquire or investigate further. Accordingly, appellant's claim regarding the trial court's failure to inquire under *Deal* is not well taken.

### Appellant's Removal from the Courtroom

{¶ 22} Appellant argues the trial court erred by removing him from the courtroom during his trial.

{¶ 23} "One of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial." *Illinois v. Allen*, 397 U.S. 337, 338, 90 S.Ct. 1057 (1970). Section 10, Article I of the Ohio Constitution mandates that "[i]n any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel." Crim.R. 43(A), in turn, provides that a "defendant must be physically present at every stage of the criminal proceeding and trial, including the impaneling of the jury, the return of the verdict, and the imposition of sentence, except as otherwise provided by these rules."

{¶ 24} However, Crim.R. 43(B) provides,

> Where a defendant's conduct in the courtroom is so disruptive that the hearing or trial cannot reasonably be conducted with the defendant's continued physical presence, the hearing or trial may proceed in the defendant's absence or by remote contemporaneous video, and judgment and sentence may be pronounced as if the defendant were present. Where the court determines that it may be essential to the preservation of the constitutional rights of the defendant, it may take such steps as are required for the communication of the courtroom proceedings to the defendant.

{¶ 25} Thus, "a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he

nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." *Allen*, 397 U.S. at 343. Blatant and deliberate disregard of the basic standards of proper conduct in the courtroom should not and cannot be tolerated. *State v. Powell*, 12th Dist. Warren No. CA2018-11-130, 2019-Ohio-4398, ¶ 19. Trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case, including removal of the defendant from the courtroom. *Id.* "Once lost, the right to be present can * * * be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings." *Allen* at 343.

{¶ 26} Contrary to appellant's assertions, appellant did not simply object or try to make a point before he was twice removed from the courtroom. After appellant interrupted the testimony of one of the officers, the trial court warned appellant about his behavior, cautioning him that he was not permitted to speak out of turn. Appellant next interrupted trial counsel's closing arguments. When the trial court reminded appellant of its prior warning, appellant replied, "I'm aware." Thereafter, appellant engaged with the trial court, talking back to and ultimately accusing the court of "making a mockery of the Court," "This is ridiculous and so are you," and "This is bullshit." The trial court removed appellant from the courtroom, ordering that he watch from a monitor in a nearby room. The next morning, appellant asserted he had behaved the day before, promised he would behave, and soon after argued with the court. The trial court removed appellant from the courtroom.

{¶ 27} We find the trial court acted properly in removing appellant from the courtroom. Despite being admonished about his behavior and receiving warnings of the consequences of his actions, appellant continued to impede his trial and conduct himself in a disruptive and disrespectful manner, including talking back to the court and making

- 9 -

abusive remarks. Appellant's disruptive behavior was such that following his first removal, trial counsel moved for a mistrial on the ground appellant's outbursts had irrevocably tainted the jury. The trial court denied the motion and instead instructed the jury not to consider appellant's outbursts or the court's response to them. "The flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated." *Allen*, 397 U.S. at 343. "Nor can the accused be permitted by his disruptive conduct indefinitely to avoid being tried on the charges brought against him." *Id.* at 346. Accordingly, appellant's claim of improper removal from the courtroom is not well taken.

<u>Admission of Father's 9-1-1 Call</u>

{¶ 28} Appellant argues that his Sixth Amendment right to confrontation was violated when the trial court admitted into evidence the 9-1-1 call from Father who did not testify at trial. Appellant asserts that the 9-1-1 call was testimonial because there was no ongoing emergency as Father had left the scene and "95% of the call was obtaining a statement about the offense and who did it and their problematic history." We review a claim that a criminal defendant's rights have been violated under the Confrontation Clause de novo. *State v. Doby*, 12th Dist. Butler No. CA2013-05-084, 2014-Ohio-2471, ¶ 31.

{¶ 29} The Confrontation Clause bars admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination. *Davis v. Washington*, 547 U.S. 813, 821, 126 S.Ct. 2266 (2006). "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Id.* at 822. "They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id.*

{¶ 30} "Typically, 911 calls made to report an ongoing emergency that requires police assistance to resolve that emergency are not 'testimonial' in nature and therefore the Confrontation Clause does not apply." *State v. Ward*, 2d Dist. Montgomery No. 26773, 2016-Ohio-5354, ¶ 249. That is because a 9-1-1 caller is generally speaking about events as they are actually happening. *Davis* at 827. Under such circumstances, the 9-1-1 caller is not testifying, the 9-1-1- caller is not acting as a witness, and the 9-1-1 caller's statements are not testimonial in nature. *Id.* at 827-828. Nonetheless, a conversation which begins as an interrogation to determine the need for emergency assistance may evolve into testimonial statements once the initial purpose has been achieved. *Id.* at 828.

{¶ 31} Upon reviewing Father's 9-1-1 call, we find that its admission did not violate appellant's confrontation right because the call was nontestimonial.

{¶ 32} The 9-1-1 call was made shortly after appellant struck Father. While Father had left the scene, appellant was still in Father's home and Father notified the dispatcher that he would not return to the scene until an officer arrived. The questions the 9-1-1 operator asked Father, e.g. questions relating to Father's location and condition, questions relating to appellant's location, whether there were weapons, alcohol, or drugs involved, and whether other individuals were involved, and questions relating to what started the domestic violence incident, clearly related to the ongoing emergency and were directed to determining the nature and scope of the emergency to which law enforcement or other responders would need to respond. *State v. Jacinto*, 8th Dist. Cuyahoga No. 108944, 2020-Ohio-3722, ¶ 69; *State v. Rinehart*, 4th Dist. Ross No. 07CA2983, 2008-Ohio-5770, ¶ 26. While during the 9-1-1 call Father stated that the "township knows all about Robert," "They were here two nights ago, they've been here a dozen times," and "Everybody knows me, everybody knows my son," these three statements did not transform the 9-1-1 call into a testimonial statement. The three statements were made during the four-minute, 32-second

- 11 -

call.  There is nothing to suggest that Father was "giving testimony" or "speaking with the intention of providing testimony at a later time."  *State v. Nagler*, 12th Dist. Madison No. CA2004-09-033, 2005-Ohio-6274, ¶ 22.   Rather, the statements were pertinent to allow police to tailor their response and enable them to resolve the present emergency.

{¶ 33} We therefore conclude that the circumstances of Father's 9-1-1 call objectively indicate that its primary purpose was to enable police assistance to meet an ongoing emergency.  *Davis*, 547 U.S. at 828.  Father was not acting as a witness; Father was not testifying.  *Id.*  Accordingly, appellant's claim that the admission of the 9-1-1 call violated the Confrontation Clause is not well taken.

### Admission of Appellant's Prior Domestic Violence Convictions

{¶ 34} Although ostensibly couched as an ineffective assistance of counsel argument (and without providing the *Strickland* test or demonstrating how trial counsel's performance met the *Strickland* test), appellant's fourth issue challenges the admission of appellant's two prior domestic violence convictions.   Appellant asserts that the prior domestic violence convictions were inadmissible and prejudicial because he had stipulated to the prior convictions during a pretrial hearing.  In support of his argument, appellant relies on *Old Chief v. United States*, 519 U.S. 172, 117 S.Ct. 644 (1997), and *State v. Creech*, 150 Ohio St.3d 540, 2016-Ohio-8440, to argue that the state improperly exceeded the scope of appellant's stipulation to his prior convictions.   Appellant contends that the admission of these prior convictions created unfair prejudice in violation of Evid.R. 404(B) because it demonstrated a propensity to commit domestic violence.  At trial, one officer testified that appellant had a 2010 domestic violence conviction in Hamilton County and a 2012 domestic violence conviction in Warren County.  Both prior convictions were admitted into evidence.

{¶ 35} Appellant was charged with committing domestic violence in violation of R.C.

2919.25(A). While this offense is usually a first-degree misdemeanor, the crime is elevated to a third-degree felony if the defendant has been convicted of two or more offenses of domestic violence. R.C. 2919.25(D)(4). Because prior convictions for domestic violence raise the degree of a subsequent offense, the prior convictions are an essential element of the subsequent offense and must be proved by the state beyond a reasonable doubt. *State v. Tate*, 138 Ohio St.3d 139, 2014-Ohio-44, ¶ 17; *State v. Henderson*, 58 Ohio St.2d 171, 173 (1979); *State v. Russell*, 12th Dist. Butler No. CA2012-03-066, 2013-Ohio-1381, ¶ 10.

{¶ 36} We find that the admission of appellant's two prior domestic violence convictions was proper and not prejudicial. Appellant's prior convictions were an essential element of the state's case that the state needed to prove. During the pretrial hearing, appellant stipulated that the documentation of his prior convictions was admissible evidence and the state accepted his stipulation to avoid calling a witness to testify to its authenticity. Thus, appellant only stipulated to the authenticity of the documents evidencing his prior convictions, not that his prior convictions fulfilled one of the elements of the crime charged. Under these circumstances, evidence was properly adduced at trial on that issue. *State v. Thompson*, 9th Dist. Lorain No. 98CA007112, 2000 Ohio App. LEXIS 722, *10 (Mar. 1, 2000).

{¶ 37} Appellant cites this court's decision in *State v. Harmon*, 12th Dist. Warren No. CA2019-01-007, 2019-Ohio-5036, in which we held,

> "A stipulation of fact renders proof of that specific fact unnecessary." *State v. Schleiger*, 12th Dist. Preble No. CA2009-09-026, 2018-Ohio-2359, ¶ 19, citing *State v. Eckert*, 12th Dist. Clermont No. CA2008-10-099, 2009-Ohio-3312, ¶ 17. Therefore, because the record firmly establishes that the parties stipulated that Harmon had two prior public indecency convictions prior to trial while discussing the matter in chambers with the trial court judge, it was unnecessary for the state to provide any evidence as it relates to those two convictions at trial.

*Id.* at ¶ 11. In that case, the parties stipulated that Harmon had two prior public indecency convictions in Hamilton County in 2002 and 2013. Due to this stipulation, the parties further agreed there was no need for the state to introduce any testimony or evidence regarding Harmon's two prior convictions at trial. *Harmon* is clearly distinguishable and not applicable here.

{¶ 38} Turning to *Old Chief* and *Creech*, we find that both decisions are distinguishable from the present case. As this court recently discussed, "While both of those cases involved an offense that required proof of a prior conviction as an essential element to the underlying offense, in *Old Chief* and *Creech*, that essential element could be established by a type of conviction instead of a specific conviction." *State v. Jozwiak*, 12th Dist. Warren No. CA2019-09-091, 2020-Ohio-3694, ¶ 29. The United States Supreme Court determined that "[t]he most the jury needs to know is that the conviction admitted by the defendant falls within the class of crimes" that would provide the qualifying effect to satisfy the essential element. *Old Chief*, 519 U.S. at 190-191. Similarly, the Ohio Supreme Court determined that under Ohio law a conviction for a broad category of crimes would provide the qualifying effect. *Creech*, 2016-Ohio-8440 at ¶ 34-35. "In a prosecution for these offenses, a defendant's stipulation or offer to stipulate to the prior conviction provides the same evidentiary value to the government as if the government presents its own evidence. This is because it is the legal status conferred by the prior conviction and not a specific conviction that proves the necessary element in the underlying offense." *Jozwiak* at ¶ 29.

{¶ 39} Conversely, the relevant statutes in the case at bar, R.C. 2919.25(A) and (D)(4), require proof of a specific offense, a prior domestic violence conviction, to prove an essential element of the underlying offense. *See Tate*, 2014-Ohio-44 at ¶ 17. In the case at bar, the state had to prove that appellant had been convicted of two or more prior

domestic violence offenses as an element of the current domestic violence offense. Besides the officer's testimony of the prior convictions and admission of the certified judgment entries, the state did not otherwise discuss the context or facts of the prior convictions. Because there was no explanation of the nature of the previous domestic violence convictions, the jury was unlikely to ascribe unfair prejudice. Therefore, there was no violation of Evid.R. 404. Appellant's claim that his two prior domestic violence convictions were improperly admitted is not well taken.

## Cumulative Error

{¶ 40} Finally, appellant argues that even if the individual errors did not merit a reversal of his domestic violence conviction, this court should consider whether the claimed errors cumulatively deprived appellant of a fair trial. Having determined that there were no errors, harmless or otherwise, we find that appellant received a fair trial. Therefore, the cumulative error doctrine does not apply. *Jozwiak*, 2020-Ohio-3694 at ¶ 37.

{¶ 41} Appellant's assignment of error is overruled.

{¶ 42} Judgment affirmed.

HENDRICKSON and BYRNE, JJ., concur.