[Cite as *State v. Haag*, 2023-Ohio-877.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2022-05-008 |
| | : | O P I N I O N |
| - vs - | | 3/20/2023 |
| | : | |
| RICHARD HAAG, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM EATON MUNICIPAL COURT
Case No. CRB 2100442

Martin P. Votel, Preble County Prosecuting Attorney, and Kathryn M. West, Assistant Prosecuting Attorney, for appellee.

Vanzant Law Office, and James B. Vanzant, for appellant.

**M. POWELL, J.**

{¶ 1} Appellant, Richard Haag, appeals his conviction in the Eaton Municipal Court for domestic violence and criminal damaging.

{¶ 2} On May 29, 2021, the Preble County Sheriff's Office received a 9-1-1 call from Payton Johnson stating that he and another person had just witnessed a bearded male,

later identified as appellant, beat a 60-year-old woman at the Deer Run Campground. Specifically, Johnson reported that appellant was "full on" punching the woman while she was on the ground. Johnson stated that appellant was wearing blue jeans and black boots. Johnson further informed the 9-1-1 dispatcher that appellant had since left in a green truck, that he did not know whether appellant had left the campground, and that the woman went into a camper, crying and holding her arm. Johnson told the 9-1-1 dispatcher that he wanted to make sure the woman was alright because appellant was beating her.

{¶ 3} Deputy Terry Strawser was among those dispatched in response to the 9-1-1 call; he arrived at appellant's camper approximately 17 minutes later. Upon arrival, Deputy Strawser contacted Sherri Allen, the victim of the assault. Allen told the deputy that she came out of the camper to ask appellant a question and that appellant became angry and began hitting her car with a hammer. When Allen warned him not to hit her car again, appellant grabbed her by the throat and the two ended up inside the camper. Once in the camper, appellant got into her face, threatened to beat her up with the hammer, and told her he would kill her. Appellant then retrieved a nearby hand saw, stroked the blade, and stated he was going to saw her up. The two came back outside of the camper; appellant began punching Allen on her body and the back of her head and pulling her hair as she lay on the ground. Once again, appellant threatened he would kill her. Deputy Strawser observed scrapes and scratches on Allen and took photographs of the injuries. Allen declined medical assistance. When asked if appellant was still armed, Allen replied, "Not that I know of." Deputy Strawser's exchange with Allen was recorded by a camera mounted in the deputy's patrol vehicle ("cruiser cam"). Throughout the exchange, Allen can be heard crying and moaning.

{¶ 4} Appellant was charged by complaint with first-degree misdemeanor domestic violence and second-degree misdemeanor criminal damaging. Appellant filed a motion in

limine to exclude the recorded 9-1-1 call, arguing that, if played to the jury, it would violate his Sixth Amendment right of confrontation. The state filed a motion in limine to allow the 9-1-1 call and Deputy Strawser's cruiser cam recording to be presented and played at trial, arguing they both fell under the excited utterance and present sense impression exceptions to the hearsay rule. The trial court issued two journal entries, allowing the 9-1-1 call and a 9-minute, 36-second portion of the cruiser cam recording to be presented at trial. Regarding the cruiser cam recording, the trial court specifically found that "[t]he Court will allow the State to use this video beginning at 17 minutes 40 seconds until 27 minutes 16 seconds. * * * The Court finds that the remainder of the video becomes testimonial in nature * * * and is therefore excluded." The trial court found that the permitted recordings were nontestimonial in nature; the court further found that the permitted portion of the cruiser cam recording fell under the excited utterance and present sense impression exceptions to the hearsay rule pursuant to Evid.R. 803(1) and (2), respectively.

{¶ 5} The matter proceeded to a jury trial. Allen was not a cooperative witness; the state compelled her attendance by means of a writ of attachment. Although Allen was called as a witness by the state as if on cross-examination, she denied any memory of the events. The only other witnesses presented by the state were Deputy Strawser and another deputy, neither of whom witnessed the altercation between Allen and appellant. During the state's case-in-chief, trial counsel objected to the 9-1-1 call and the cruiser cam recording being played at trial, arguing that they were both testimonial and violated appellant's Sixth Amendment right to confront witnesses against him. The trial court overruled the objections. Both recordings were played to the jury and admitted into evidence.

{¶ 6} Deputy Strawser testified that the physical altercation appeared to have occurred not long before his arrival; Allen was very upset and was crying, shaking, scared, distraught, and frantic. The deputy observed scrapes, abrasions, and mud stains on Allen

that appeared to be fresh. Appellant testified and generally denied that he had assaulted Allen. On July 15, 2022, the jury found appellant guilty as charged.

{¶ 7} Appellant now appeals, raising one assignment of error:

{¶ 8} THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED TO THE PREJUDICE OF APPELLANT BY ALLOWING THE STATE TO PRESENT THE AUDIO AND/OR VIDEO RECORDED STATEMENTS OF A 911 CALLER AND THE ALLEGED VICTIM AS EVIDENCE TO THE JURY IN LIEU OF ACTUAL IN-COURT TESTIMONY FROM THE WITNESSES, THUS VIOLATING APPELLANT'S RIGHT OF CONFRONTATION AND CROSS-EXAMINATION OF WITNESSES AGAINST HIM.

{¶ 9} Appellant argues that his Sixth Amendment right to confront witnesses against him was violated when the trial court admitted into evidence the 9-1-1 call and the cruiser cam recording of Allen's statements to Deputy Strawser at the scene of the incident. Appellant asserts that both recordings were testimonial because they described past events and there was no ongoing emergency as he had left the scene. An appellate court reviews a claim that a criminal defendant's rights have been violated under the Confrontation Clause de novo. *State v. Cook*, 12th Dist. Warren No. CA20020-08-053, 2021-Ohio-2157, ¶ 28.

{¶ 10} The Confrontation Clause of the Sixth Amendment to the United States Constitution provides, "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." The Confrontation Clause bars admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S.Ct. 1354 (2004). Only testimonial statements cause the declarant to be a "witness" within the meaning of the Confrontation Clause; they include statements taken by police officers in the course of interrogations. *Davis v. Washington*, 547 U.S. 813, 821-822, 126 S.Ct. 2266 (2006).

{¶ 11} "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id.* at 822.[1] In determining whether a declarant's statements are testimonial, courts should look to all of the relevant circumstances. *State v. Smith*, 8th Dist. Cuyahoga No. 111274, 2023-Ohio-603, ¶ 89.

Admission of the 9-1-1 Call

{¶ 12} Typically, 9-1-1 calls made to report an ongoing emergency that requires police assistance to resolve that emergency are not testimonial in nature and therefore the Confrontation Clause does not apply. *Davis*, 547 U.S. at 828; *Cook*, 2021-Ohio-2157 at ¶ 30; *State v. Ward*, 2d Dist. Montgomery No. 26773, 2016-Ohio-5354, ¶ 24. That is because a 9-1-1 caller is generally speaking about events as they are actually happening. *Davis* at 827. Under such circumstances, the 9-1-1 caller is not testifying, the 9-1-1-caller is not acting as a witness, and the 9-1-1 caller's statements are not testimonial in nature. *Id.* at 827-828. Nonetheless, a conversation which begins as an interrogation to determine the need for emergency assistance may evolve into testimonial statements once the initial

---

1. *Davis* involved two consolidated cases, *Davis v. Washington*, and *Hammon v. Indiana*. *Davis* involved statements that a domestic-violence victim made to a 9-1-1 operator identifying her assailant and describing his whereabouts immediately after an assault, while *Hammon* involved statements made to police officers responding to a domestic-violence complaint after they had secured the scene. In considering whether the statements in these cases were testimonial, the United States Supreme Court distinguished between police interrogations that concern an ongoing emergency and those that relate to past criminal conduct, and in doing so, formulated what courts around the country have come to refer to as the primary-purpose test. The Ohio Supreme Court applies different tests to determine whether statements are testimonial, based on the identity of the questioner. If the questioner is a law enforcement officer or an agent of law enforcement, the supreme court applies the primary-purpose test. *See State v. Siler*, 116 Ohio St.3d 39, 2007-Ohio-5637; *State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677. If, however, the questioner is not a law enforcement officer or agent of law enforcement, the court applies the "objective witness test." *See State v. Stahl*, 111 Ohio St.3d 186, 2006-Ohio-5482; *Jones.*

purpose has been achieved. *Id.* at 828.

{¶ 13} The record indicates that the 9-1-1 call was made shortly after appellant assaulted Allen and drove away. The caller described the assault as a "full on" punching of a woman as she lay on the ground. The caller further informed the 9-1-1 dispatcher that he did not know whether appellant had left the campground, and that the woman went into a camper, crying and holding her arm. The caller told the 9-1-1 dispatcher that he wanted to make sure the woman was alright because appellant was beating her. We find that the circumstances of the 9-1-1 call objectively indicate that its primary purpose was to seek and enable police assistance to aid the woman, Allen, in an ongoing emergency. The caller was not acting as a witness; the caller was not testifying. Rather, the 9-1-1 caller was seeking immediate assistance and providing information for that purpose. The 9-1-1 call was therefore nontestimonial and its admission into evidence did not violate the Confrontation Clause. *See Cook; State v. McDaniel*, 2d Dist. Montgomery No. 24423, 2011-Ohio-6326.

Admission of the Cruiser Cam Recording

{¶ 14} "'Whether an emergency exists and is ongoing is a highly context-dependent inquiry.'" *State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, ¶ 151, quoting *Michigan v. Bryant*, 562 U.S. 344, 363, 131 S.Ct. 1143 (2011). "[W]hether an ongoing emergency exists is simply one factor—albeit an important factor—that informs the ultimate inquiry regarding the 'primary purpose' of an interrogation." *Bryant* at 366. Other factors to consider include the formality of the encounter and the statements and actions of both the declarant and interrogators. *Jones* at ¶ 154-155; *State v. Knecht*, 12th Dist. Warren No. CA2015-04-037, 2015-Ohio-4316, ¶ 23. Accordingly, "the question is whether, in light of all the circumstances, viewed objectively, the 'primary purpose' of the conversation was to 'creat[e] an out-of-court substitute for trial testimony.'" *Knecht* at ¶ 23.

{¶ 15} We find that Allen's statements to Deputy Strawser at the scene of the incident as heard during the 9-minute, 36-second portion of the cruiser cam recording were nontestimonial because the primary purpose in questioning Allen was not to create an out-of-court substitute trial testimony. Rather, the questioning was conducted in response to the 9-1-1 call reporting that Allen had been a victim of an assault. "As the Supreme Court stated, an emergency 'does not last only for the time between when the assailant pulls the trigger and the bullet hits the victim.'" *Knecht* at ¶ 25, quoting *Bryant* at 373. Although appellant was no longer on the scene, he had not been apprehended, and the emergency was still in progress. The physical altercation occurred not long before the deputies arrived, and once Deputy Strawser arrived on the scene, he discovered Allen injured, visibly shaken, and in a very emotional state. These circumstances objectively indicate that the primary purpose of the questioning was to enable the deputy to determine what happened to Allen, assess her injuries to determine whether she was in need of medical treatment, and determine whether appellant presented a risk to the public or Allen should he return. In other words, the circumstances objectively indicate that the primary purpose of the questioning was to assist Allen in an ongoing emergency. Allen's statements to the deputy were nontestimonial and their admission into evidence via the cruiser cam recording did not violate the Confrontation Clause. *See Cleveland v. Colon*, 8th Dist. Cuyahoga No. 87824, 2007-Ohio-269; *State v. Sanchez*, 8th Dist. Cuyahoga Nos. 93569 and 93570, 2010-Ohio-6153; *Toledo v. Jenkins*, 6th Dist. Lucas No. L-14-1164, 2015-Ohio-1270.

{¶ 16} Appellant's assignment of error is overruled.

{¶ 17} As stated above, appellant was found guilty of domestic violence and criminal damaging following a jury trial. The trial court's April 21, 2022 Journal Entry/Sentencing Order incorrectly states that appellant "entered plea(s)" to the charges and that his "plea was accepted." The trial court's April 21, 2022 Journal Entry/Sentencing Order finding

appellant "entered plea(s)" to the charges is hereby modified to reflect that appellant was found guilty following a jury trial.

**{¶ 18}** Judgment affirmed as modified.

HENDRICKSON, P.J., and PIPER, J., concur.